. No. 7332.

## SUCCESSION OF HUGH McCLOSKEY.

Actions against sheriffs and their sureties are prescribed by the lapse of two years from the date at which the right of action accrued.

Where the wrong complained of is malfeasance, an active violation of the official duty of the sheriff, as for a false return, a wrongful seizure, etc., the right of action accrues, and the prescription begins to run from the date of the act.

Where the wrong complained of is merely a passive violation by the sheriff of his official duty, such as the failure to pay over money collected by him, the right of action accrues, and the prescription begins to run only from the date of the demand made by the party entitled, or his agent or attorney.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.*

*Thos. Gilmore & Sons* for executors, appellants.

*S. P. Blanc,* assistant city attorney, and *F. N. Butler* for the city of New Orleans, appellee.

*E. H. Farrar,* agent, *in propria persona,* opponent and appellee.

*J. H. Ferguson* for Hollingsworth, opponent and appellee.

*Breaux, Fenner & Hall,* and *T. C. W. Ellis, amici curiæ.*

---

T. Gilmore & Sons, for executors, contended :

First—The effect of that sale (it being a sale, under a decree of the probate court, to pay a debt of the successions of Dubois and Mish) was to extinguish any mortgage or privilege that might have existed on the property. Succession of Triche, 29 An. 385; 27 An. 279; 24 An. 482; 23 An. 298; 21 An. 424, 253; Hennen's Digest, page 962, No. 2.

Second—Beyond that, the evidence shows that the city taxes of 1869 and 1870 were collected by the sheriff under writs of fieri facias. Sheriff's receipts, A and B, pages 311, 312, 313. Those claimed for 1868, if unpaid at the time of the sale, were not recorded, and without inscription there was no privilege against the property which could affect third persons. Constitution of 1868, art. 123; Act of 1869, page 114; Adams vs. Wakefield, 26 An. 592; Savings Institution vs. Leslie, 28 An. 496—both cases of city taxes for 1868; Marin vs. Sheriff, 30 An. 293; Cochran vs. Ocean Dry Dock, 30 An.

Third—By sections 3615 and 3620 of the Revised Statutes, the sheriff is prohibited from executing a deed of sale to the purchaser until the State and municipal taxes are paid. Not only, therefore, was it his duty to see that the taxes were paid, but he was the special agent of the city to collect them. Ordinances of City, pages 179–190; testimony of Walsh, pages 290–295; Ricker, pages 306–308; Presas, 334–336.

Fourth—Where property of a succession is sold, and and the accrued taxes due the city of New Orleans are assumed by the purchaser, and the city acquiesces in the assumption, the succession will not be held for the taxes.

Fifth—Action against the sureties of a sheriff for failure to pay over money collected by him is prescribed in one and two years. And for any tort of the sheriff, such as seizing under attachment the property of a third person, the prescription of one year applies. C. C. 3536; Louque's Digest, p. 495; Rev. Stats. 2816, 2546; 23 An. 300; 25 An. 360; 30 An. 486.

S. P. Blanc and F. N. Butler, for the city, contended :

First—At the date of the sale, the succession owed the tax; it was then due and exigible; the law required that all taxes due should be paid out of the proceeds of the sale, and the succession, which has realized the entire purchase price, cannot shift its liability, and relegate the city to a third party for the collection of its tax.

Second—That until Act No. 73 of 1872 the city of New Orleans did not have to record her liens for taxes, and that after the passage of that act she could not be construed to lose one of her liens for taxes for want of the required record, if it appeared that the record was made as soon thereafter as was practicable.

Third—The constitutional article requiring the Legislature to provide by law for the registration of mortgages and privileges did not require individuals or corporations to register their liens or mortgages until the Legislature had provided the laws required by the constitution. 24 An. 214; 28 An. 497.

E. H. Farrar, for himself as agent, contended :

First—That a sheriff is responsible as depositary for money collected by him, and his liability for such collections is imprescriptible. C. C. 2979 to 2981; 23 An. 474; 26 An. 126.

Second—The prescription of two years in favor of sheriffs and their sureties, provided in section 3546 of the Revised Statutes, does not begin to run until a demand is made on the sheriff. 3 R. 297; 14 A. 216; 23 A. 299; 30 A. 486.

The opinion of the court was delivered by

DeBlanc, J. To the sixth provisional account filed by James D. Martin, as executor of the last will of Hugh McCloskey, three oppositions have been filed.

1. One by the city of New Orleans, in which it claims as being due by said succession taxes of 1868, 1869, 1870, 1871, 1872, 1873, 1874, 1875, 1876, 1877, and 1878.

This opposition was partly maintained as to the taxes of 1878, and dismissed as to only the taxes alleged to have been levied in 1868, 1869, and 1870.

2. Two others—one by David M. Hollingsworth, and the third by E. H. Farrar, Esq., as agent of Mrs. Ellen T. V. Fisher. These are based upon claims against McCloskey, as one of the sureties of T. L. Maxwell, late sheriff of the parish of Orleans.

I.

City's opposition.

The taxes of 1878 were levied on property belonging to the deceased's succession, and which was sold—in March of that year—to pay legacies, and upon the express condition that the purchasers should assume the payment—over and above the price of adjudication—of all taxes due and exigible in 1878.

The city's claim for the tax of that year was $1202 50, and—of that amount—the city received from one of the purchasers of the property sold subject to said tax, $525, leaving due a balance of $667 50. It is urged that—by thus dividing its tax-bill—the city acquiesced in the terms of the sale made in March.

" The mere indication made by a debtor of a person who is to pay in his place, does not operate a novation," unless the creditor has expressly declared his intention to discharge his debtor.

C. C. 2194 (2190), 2192 (2188).

The terms and conditions of the sale were not fixed with the consent of the city authorities, and could not—without that consent, affect its established rights ; nor can its acceptance of a part of its claim, be construed as an abandonment of the action which it had and has, to enforce the payment of the balance due, on the cash proceeds of the sale.

As to the taxes of 1871, 1873, 1874, 1875, 1876, and 1877, the executor contends that the property on which they were levied, has not been sold, and that the city cannot require that they be paid out of funds arising from the sale of other property. Were it not proven—as justly remarked by the district judge—that the estate of McCloskey is solvent, that the object of the executor's account is to distribute thousands of dollars to his legatees, that defence might be considered and sustained; but debts must be paid before legacies, and the city's right to collect its annual revenues does not depend on exclusively the sale of the property subject to its tax-liens; and—as regards a solvent succession—that right may be exercised against any funds which belong to it and which are not affected by a privilege excluding that of the city.

In 1871, McCloskey purchased at sheriff's sale, and for $51,000, which he paid cash, an improved lot of ground, on which—in 1868—the

city had levied a tax of $1200. At the date of the sale, no tax-lien was recorded against said property, and it is now settled that—since the promulgation of the act of 1869, which carried into effect the 123d article of the State constitution—no unrecorded privilege can affect third parties.

26 A. 592; 28 A. 496; 30 A. 293.

The city's claim for the taxes of 1869 and 1870 is absolutely unfounded. They were paid to and received by the sheriff, who then held writs which he was about to enforce against the assessed property; and the fact that they were not accounted for and did not reach the city's treasury, did not revive a liability which was discharged by a payment regularly made.

II.

Opposition of E. H. Farrar, agent.

Thomas L. Maxwell—as sheriff of the parish of Orleans—received for Mrs. Fisher, two hundred and eleven dollars, which he failed to account for, and which are claimed against the succession of McCloskey, one of the sureties of Maxwell on his official bond. The executor opposes—as a bar to her demand the prescription of two years, and—to sustain that plea—his counsel rely on sections 2816 and 3546 of the Revised Statutes, which provide : " That the sheriffs and their sureties shall be able to prescribe against their acts of misfeasance, non-feasance, costs, offences, and quasi-offences, after the lapse of two years from the day of the omission or commission of the acts complained of."

In Hugh vs. Hernandez, a majority of our predecessors held " that the action against the sureties of a sheriff for money collected by him, and not accounted for to the party entitled to it, is barred by the prescription of two years." 25 An. 360.

That construction is not justified by the terms of the law—for, as said by Mr. Justice Wyly, who did not concur in that opinion, " the sheriff's obligation did not spring from any act of omission or commission, nor from an offence or quasi-offence. When he took the money, he committed no wrong, he discharged a duty, and—from the date of that lawful taking—incurred the obligation to restore.

The difficulty in this matter—added the dissenting Justice—arises from confounding the reason for the suit and the cause of the obligation. The sheriff failed or refused to pay over the money; this was the reason for the suit. The obligation to restore was not created by the failure or refusal to pay—it existed long before.

This construction is evidently correct, and Mrs. Fisher's action against the sureties of the sheriff, is a personal action, which could have been barred but by the prescription of ten years.

### III.

Opposition of Hollingsworth.

In 1870, Thomas Maxwell attached, as belonging to a debtor of Gayarré and others, a lot of furniture which Déjean had purchased from Hearing, and sold to another party. A controversy grew out of that attachment, and—while it was pending—Déjean released the furniture from the attachment, by leaving in the hands of the sheriff the price for which he had sold it—from four hundred and ninety-eight to five hundred dollars. He, thereafter, surrendered in bankruptcy and Hollingsworth purchased from his assignee the claim which he had against Maxwell, on account of that deposit.

The executor contends that the sheriff was without authority to receive money in lieu of the attached property, and that—by inducing him to accept that substitution—Déjean—by his own act—discharged his sureties from any liability as to that matter.

It appears—from Déjean's testimony—that the furniture attached was released by the sheriff, not by virtue of any order of court, but under a private agreement entered into between them. The sheriff turned over to him part of the furniture which he held under and subject to the writ issued on the judgment of Gayarré and others. That was a violation of his official duty, for which he and the sureties on his bond could have been made to suffer, had the judgment creditors succeeded in maintaining their attachment; and—in order to protect Maxwell against the effects of his unauthorized act—Déjean deposited in his hands what they both considered as the value of the released furniture.

Could Maxwell—as sheriff—have relieved himself from responsibility, by tendering to the creditors the amount thus deposited, and compelled them to receive it, in lieu of whatever rights they had acquired under the attachment? Assuredly not; and—had Déjean not failed and retained his claim, could he have enforced it against the sureties of Maxwell? Would he not have been told : "You and he did what you had no authority to do—you trusted Maxwell, not the sheriff—your deposit was a voluntary, not a judicial deposit. It was not under an order of court that the sheriff delivered to you a part of the attached furniture, nor under any writ that he took your money. This he and you did of your own will, by mutual agreement, and that officer's sureties are not liable for a loss which was the result of your own violation of the law."

In the Gayarré case, introduced in evidence on behalf of Hollingsworth, our predecessors held that Hearing—Déjean's vendor—was the owner of the furniture which had been attached as belonging to Gayarré's debtor. He might have complained of the delivery of the furniture to Déjean; but the latter was not a party to that suit, could not

have released said furniture on bond, and obtained from Maxwell, as a favor, that which he could not have claimed as a matter of right—and that was the possession of effects which he held for a judgment creditor, and which—thereafter—were decreed to belong to Hearing. The unauthorized act, which alone exposed the sureties of the insolvent sheriff to an action on the part of the owner and seizing creditor, for the value of the effects delivered to Déjean, was *that delivery itself*—for it was his duty—as sheriff—to retain, subject to the order of the court, the effects which he had attached. As to the deposit of the money, that was *Déjean's act :* it created a personal, not an official liability, which Déjean himself could have enforced, and which Hollingsworth—as his transferee—can enforce but against Maxwell.

This defence, we presume, was not urged in the lower court. It is not alluded to in the brief submitted by Hollingsworth's counsel, nor in the exhaustive opinion which precedes the decree rendered by the district court. Howsoever that may be, that defence must prevail.

It is—therefore—ordered, adjudged and decreed that, in so far only as it sustains the opposition of David M. Hollingsworth, the judgment appealed from is avoided and reversed, and his demand rejected ; the costs of his opposition in the appellate and district courts to be paid by him.

It is further ordered, adjudged and decreed that—in all other respects—the judgment appealed from is affirmed at the costs of the succession of Hugh McCloskey.

---

## On Rehearing.

Marr, J. The rehearing was granted, in this case, to David M. Hollingsworth, and to the succession of McCloskey as against the city of New Orleans. No complaint was made as to that part of the original decree which affirmed the judgment of the district court on the opposition of E. H. Farrar; and it became final by the lapse of time. *Amici curiæ* have asked a modification of our opinion, in so far as it relates to the prescription in favor of sheriffs and their sureties; and we have carefully reconsidered the whole case.

### I.

Our decision in the claim and opposition of Hollingsworth rests upon the single ground that the money demanded by him was not received by the sheriff in his official capacity; and that the sureties were not liable for that reason. We see no reason to doubt the correctness of the original decree rejecting this demand; and it will not be disturbed.

## II.

We were in error as to the amount due by the succession to the city for taxes of 1878 on the property in square No. 172. The city claimed $1202 50. It was proven that $525 had been paid by purchasers of part of the property; and the judgment of the district court reduced the amount to $677 50. The assessed value of the property was $50,000; and the limit of taxation was fixed by the act of 1876, sec. 11, p. 57, at one and a half per cent. At this rate the whole amount of the tax would have been $750; and the actual balance, after deducting the $525 paid on account, should have been $225. The judgment of the district court, and our decree affirming it, must be corrected in this respect.

## III.

The decree in favor of Farrar having become final is beyond our control. The only defense set up against it was the prescription of two years. In the agreement of counsel it was admitted that no demand had ever been made on the sheriff or his sureties until about two months before the opposition was filed. As we shall see hereafter, the prescription in favor of the sheriff and his sureties for money received by him in his official capacity, does not begin to run until demand has been made of the sheriff, and he has refused or failed to pay. As the demand was made for the first time only about two months before the filing of the opposition, the prescription of two years had not been acquired; and, strictly speaking, it was not necessary to express the opinion that this prescription was not applicable. In support of the plea our attention was called to a single decision, Hugh vs. Hernandez, 25 An. 360; and we adopted the views of the justice who dissented in that case, that the demand was not subject to the prescription of two years. A review of the authorities cited in argument, on the rehearing, inclines us to the opinion that the question has passed into the domain of *res adjudicata;* and that the views expressed in the original opinion are contrary to the settled jurisprudence of the State, which we would not willingly disturb.

In Semple vs. Buhler, 6 N. S. 665, which was a suit against a sheriff for malfeasance in taking the wife of the purchaser as surety in a twelve-months' bond, the court held that the action was barred by the prescription of one year ; and in Fisk vs. Browder, 6 N. S. 691, which was also a suit against the sheriff for malfeasance in making a false return on a *fieri facias,* the court again decided that it was prescribed by the lapse of one year.

In 1837 the Legislature passed an act entitled "An Act to extend the time of prescription in reference to the acts of sheriffs," which provides that "no sheriff or his security or securities shall be able to prescribe against his acts of malfeasance, non-feasance, costs, offences and

quasi-offences, but after the lapse of two years from the day of the omission of acts complained of." Acts of 1837, p. 34.

Under the dominion of this act a suit was brought against a sheriff and his sureties, in his official bond, for his failure to pay to the judgment creditor a sum of money received by him, proceeds of a sale under *fieri facias*. The court being of opinion that the act covered all the cases in which the sureties of the sheriff could be held liable, maintained the plea of prescription of two years. Mullhollan vs. Henderson, 3 Rob. 297.

In Brice vs. Jones, 5 An. 635, which was a suit against a sheriff for damages for a wrongful seizure, the court held that the prescription of two years was applicable; and in Kohler vs. Walden, 23 An. 299, which was a suit against a sheriff and his sureties for his failure to pay over money received by him in his official capacity, it was decided that the demand was subject to the prescription of two years.

In the general compilation, acts of 1855, under the title "An Act relative to sheriffs," p. 367, sec. 10, the act of 1837 was modified and re-enacted as follows :

"That the sheriffs and their securities shall be able to prescribe against their acts of misfeasance, non-feasance, *costs*, offences and quasi-offences, after the lapse of two years from the omission or commission of the acts complained of ;" and this section was re-enacted, *totidem verbis*, in the Revised Statutes of 1870, sections 2816, 3546. No doubt the word *costs* was a misprint for *torts*, originally; and it was merely copied from the original, in 1855, and again in 1870.

In Fuqua vs. Young, 14 An. 216, which was a suit against the sureties of a sheriff to recover a sum of money received by him from sales under execution, the court decided that the prescription of two years began to run only from the date of the demand by the judgment creditor, and non-payment by the sheriff; and this doctrine was affirmed in Kohler vs. Walden, 23 An. This question came before us in Soulé vs. Norwood, 30 An. 486 ; and we decided that, by the terms of the C. P. art. 766, the sheriff was not in default for not paying until the first demand of payment made by plaintiff; and that the right of action did not accrue, and prescription did not begin to run, until the sheriff was put *in mora* for non-payment of the money collected by him.

We think these several decisions establish the following propositions :

1st. That actions against sheriffs and their sureties are prescribed by the lapse of two years from the day the right of action accrues. See, also, Hardee vs. Dunn, 13 An. 161.

2d. That where the wrong complained of is malfeasance, an active violation of the official duty of the sheriff, as for a false return, a wrong-

ful seizure, etc., the right of action accrues, and the prescription begins
to run from the date of the act.

3d.   That where the wrong complained of is merely a passive vio-
lation by the sheriff of his official duty, as failure to pay over money
collected by him, the right of action accrues, and the prescription begins
to run only from the date of the demand made by the party entitled, or
his agent or attorney.

It will not be expected that we should say or intimate in advance
how we would decide any question· whatever that may hereafter be
brought before us ; but we think it not amiss to say that should we be
required to pass judicially upon the question of prescription in favor of
sheriffs and their sureties, we shall not consider ourselves bound or con-
cluded by the views expressed in our original opinion in this case, how-
ever correct we might consider them, if we were at liberty to treat the
question as *res. nova.*

Our former decree must be modified in conformity with the views
herein expressed ; and, accordingly, it is now ordered, adjudged and
decreed, that the claim of the city of New Orleans against the succes-
sion of Hugh McCloskey for taxes for the year 1878, on the property in
square No. 172, be reduced to the sum of two hundred and twenty-five
dollars : that the costs of this appeal be borne equally by the city of
New Orleans, the succession of Hugh McCloskey, and David M. Hol-
lingsworth ; and that the original decree herein be, in all other respects,
affirmed.

----

### On Rehearing.

DeBlanc, J.   We held that the action of a judgment creditor against
a sheriff and the sureties on his bond, for money collected by the sheriff,
on process to him directed, and which he has failed to pay to the cred-
itor, is not barred by the prescription of two years.

That opinion is assailed on the grounds—1st : that it violates the
rule of *stare decisis*—2d. that we have entirely mistaken *the cause* of
the obligation evidenced by the bond, and misplaced the time at which
it springs into existence.

### I.

To sustain the invoked prescription and the charge that we have
violated the rule of *stare decisis*, two decisions are relied upon, one ren-
dered in 1842, the other in 1873, the first by all the judges of this court,
and the last—in which the first is not referred to—by only *four* of said
judges.

We are reminded that, for thirty-seven years, those decisions have
been acquiesced in.   This assertion is partly contradicted by our re-

ports. In 1871, less than two years before the last one was read, the very judges by whom it was rendered, held, without a dissenting voice, " that a suit to recover from the sheriff money made by him in a judicial proceeding, is not an action against the sheriff for misfeasance or non-feasance in office, and is not prescribed by two years."

23 A. 474.

In " Soulé vs. Norwood," the prescription of two years was pleaded in bar of plaintiff's action against the sureties of a sheriff, for the recovery of money collected by the latter, and—in that case—we ourselves said : " That it was unnecessary to decide *whether* that prescription applied to such an action." 30 A. 486. Those expressions justify the inference that—then—we had neither convinced ourselves, nor been convinced that the Legislature could have intended to shelter, under any prescription, the prevarications of one who—when he collects—does so under a mandate created by law—and who, when he receives, is bound as a depositary.

" The rule of *stare decisis* is entitled to great weight and respect, when—as said by this court—there has been, on a point of law, a series of adjudications, all to the same effect."

6 R. R. 225.

This is undoubtedly correct ; but can it be justly asserted that, on the point now under discussion, the jurisprudence has been settled by an unbroken line of invariable adjudications ? It cannot be, and it is not too late to disregard an evident misconstruction, and to hold that the object of the misconstrued enactment could not have been to protect official prevarications ; but that it merely was to fix a reasonable delay, within which the sheriff and his sureties would remain liable for his errors, omissions and neglect in the discharge of his duties.

## II.

Have we, as charged, mistaken the case of the sureties' obligation, and the date when it accrued ? We have not—unless, however, the sheriff's obligation to pay to the creditor the money which he receives for him and under a writ, arises—not when he receives the money—but only when, upon the creditor's demand, he fails to pay it over, and— from that failure—becomes liable, with his sureties, and for an act which, as contended, can be considered as merely an act of misfeasance or non-feasance.

How reconcile that pretension with the admission that the sheriff holds by exclusively the authority of the law, in exclusively the sacred character of an official depositary ? The very foundation of that pretension is sapped by that admission.

One of the express stipulations of the bond subscribed by the sheriff *and his sureties*, is that he shall well and truly pay over all sums

of money that shall come into his hands in that capacity; and to contend—as the counsel do—that such an obligation does not precede the sheriff's failure to pay the money thus received, is to ignore the very terms of the bond, and the date of an obligation which springs from his and his sureties' consent.

Does the sheriff, by converting to his own use money received by him, in his official capacity and under a writ, and by failing or refusing to pay it over to the party for whom it was received, incur but the prescriptible liability which attaches to acts of misfeasance or nonfeasance? That cannot be : his liability, under such circumstances, is one which no prescription can shelter or destroy.

The term "misfeasance"—as said by the Supreme Court of Connecticut—"is often carelessly used to describe a malfeasance—a misfeasance being a default in not doing a lawful act in a proper manner, omitting to do it as it should be done, while a malfeasance is the doing of an act wholly wrongful, etc."

33 Conn. 115 ; Stewart's R., vol. 1, p. 576.

Bouvier and Abbott's Law Dictionaries, *in verba.*

Acting on that construction, said court held " that the act of a deputy sheriff, who had taken the property of a third person, claiming it to be the property of defendant, was not a mere neglect, default or misfeasance."

It is admitted that—so far as the sheriff is concerned—the obligation to pay over money which he has collected upon a writ, is of a fiduciary character ; but, we are impatiently told : with that obligation the sureties have nothing to do—that the sheriff may, in his official capacity, incur liabilities distinct from, and independent of those which spring from his bond, while those of his sureties can arise but under the bond, and from alone a violation of the sheriff's duty.

The bond—as to the sheriff and his sureties—evidences but one obligation. As to the sheriff, one of the conditions of that obligation is that he shall pay over whatever he collects and holds for others—and, as to his sureties, the condition is that if he does not pay, they shall. The sheriff does not *twice incur* the obligation to return what he thus receives ; first, alone and because he did receive, and afterward with his sureties, and then because he failed to pay. His failure does not create his or his sureties' obligation, it fixes the extent of their anterior and conditional liability, and that failure can, in no way, lessen that common obligation, and divest it of its fiduciary character: 26 A. 676 ; 19 L. 462.

Those who hold and possess for others, and not in their names, can never prescribe. That honest, universal and unchangeable doctrine forms a part of our legislation ; and, to sustain the two decisions in which it was disregarded—we must, not only adopt a manifest miscon-

struction of the letter and spirit of the act of 1837, but—besides—overrule, for the sole purpose of justifying that misconstruction, the countless adjudications which proclaim that irreversible doctrine, and which, as they are just and constantly adhered to, should—more than the others—be protected by the rule of "*stare decisis.*"

The statute of 1837, as at first adopted and afterwards amended, was—it seems—doomed to repeated misconstructions. According to its plain provisions, the prescription of two years runs *from the day of the omission or commission* of the acts complained of, and—nevertheless—it was several times held that it commences to run from *the date of the creditor's demand,* and the sheriff's default or refusal to pay after that demand.

That default, or his refusal to pay, cannot be correctly qualified as " the commission of an act "—this is self evident—nor can it be properly considered as a mere omission, which—generally—implies a guiltless neglect, an undesigned inattention. The Legislature, by the term " commission," meant the unlawful execution of a writ or order, in the mistaken attempt to lawfully execute the one or the other, and not, assuredly, the premeditated refusal, the unjustifiable failure of the officer to comply with his obligation and return a deposit ; and by the term "omission," the undesigned default to execute a writ, an order, or the like.

For these reasons—and on this point—I respectfully dissent from my colleagues' views and adhere to our former opinion.